UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**DENNIS M. CAVANAUGH**
JUDGE

UNITED STATES POST OFFICE
AND COURTHOUSE BUILDING
NEWARK, NJ 07101
Room No. 451
(973) 645-3574

NOT FOR PUBLICATION

LETTER-OPINION ORDER
ORIGINAL FILED WITH THE CLERK OF THE COURT

July 28, 2005

*Agnes S. Wladyka, Esq.*
Abromson & Carey
10 Park Place
Newark, New Jersey 07102

*Peter G. O'Malley, Esq.*
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102

    Re:   **<u>Wanda V. Mark v. Commissioner of Social Security</u>**
             Civil Action No.: 03-CV-1995 (DMC)

Dear Counsel:

This matter comes before the Court upon application by Plaintiff Wanda V. Mark ("Plaintiff") to overturn the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance benefits and Supplemental Security Income ("SSI"). After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that Plaintiff's motion is **denied**.

I

Plaintiff applied for disability insurance benefits on March 1, 2001, alleging disability as

1

of February 16, 2001, due to migraine headaches and lupus. (Tr. 37-39, 45-54.) This application was denied initially and again on reconsideration. (Tr. 23-36, 30-34.) Plaintiff filed an application for a hearing, which was held June 6, 2002. (Tr. 222-239.) The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated August 13, 2002. (Tr. 11-20.) The Appeals Council denied a review of the hearing on April 11, 2003, and this appeal followed. (Tr. 5-7.)

## II

Plaintiff, a 28 year old woman with a twelfth grade education, alleges disability as of February 16, 2001, due to migraine headaches and lupus. (Tr. 37-39, 45-54, 226.) The following facts are not in dispute.[1]

### A. Medical History

Laboratory reports dated January 5, 2001 and January 21, 2001, showed Plaintiff's anti-nuclear AB ANA (Hep 2) and AB titer to be positive for mixed connective tissue disease, SLE, Sjogren's syndrome, Raynaud's disease or Systemic Sclerosis. (Tr. 96, 100.) On January 16, 2001, Dr. Steven Lomazow reported that Plaintiff's daily headaches, which began six years prior, may be caused by tenderness in the cervical region. (Tr. 104.) Plaintiff often has to lie down and has photophobia and phonophobia associated with her headaches. (Id.) On January 23, 2001, a CT of Plaintiff's paranasal sinuses reviewed by Dr. Natalio Damien revealed a mild mucosal thickening within a few ethmoidal air cells with no significant sinusitis and mild hypertrophy of right nasal turbinates with mild deviation of the nasal septum to the left. (Tr. 98.) A CT of the

---

[1] The Commissioner incorporated by reference the procedural history and the statement of facts set forth in Plaintiff's Brief. (Def.'s Br. at 5.)

brain also reviewed by Dr. Natalio Damien revealed no evidence of hemorrhage, hydrocephalus or significant mass effect. (Tr. 99.) On February 26, 2001, Dr. Ortiz noted that Plaintiff was seeing a rheumatologist for lupus and headaches associated with lupus. (Tr. 101.) Dr. Ortiz also noted Plaintiff's medications were propranolol, prednisone, maxalt and hydroxychloroquine sulfate. (Id.)

On February 7, 2001, Plaintiff was examined by her physician, Dr. Joan Kowalec, and treated for psoriasis, nodules, tophi, malar rash, digital ulcers, and varicosities on her legs. (Tr. 111.) Plaintiff complained of headaches, general stiffness, fatigue and lack of energy. (Id.) On February 8, 2001, a laboratory report showed Plaintiff's anti-nuclear AB ANA (Hep 2) to be positive for mixed connective tissue disease, SLE, Sjogren's syndrome, Raynaud's disease or Systemic Sclerosis. (Tr. 117.) Dr. Kowalec assessed Plaintiff's systemic lupus as clinically controlled. (Tr. 126.) However, Dr. Kowalec assessed Plaintiff's associated bilateral carpal tunnel syndrome as "failing conservative therapy." (Id.) Dr. Kowalec recommended prednisone, hydroxycholoroquine and Celebrex, and referred Plaintiff for carpal tunnel release surgery. (Id.)

On March 14, 2001, electrodiagnostic testing by Dr. Madhavi R. Muppidi revealed evidence of a moderate carpal tunnel syndrome affecting sensory and motor components. (Tr. 119-123.) On April 24, 2001, Dr. Edwin Gangemi indicated electrodiagnostic testing revealed normal lower extremity diagnostic testing and no evidence of radiculopathy. (Tr. 102.) On July 16, 2001, a MRI of the lumbar spine revealed some abnormality within the vertebral bodies which is seen in patients with anemia. (Tr. 136.)

On May 15, 2001, Dr. C. Patel noted Plaintiff's chief complaints as migraine headaches, fatigue, neck and back pain, rheumatoid arthritis and a pinched nerve in both wrists. (Tr. 150.)

Plaintiff's medications included Celebrex, Propranolol, Hydroxychloro, prednisone and Zomig. (Tr. 151.) According to Dr. Patel, an examination of Plaintiff's cervical spine, knees, shoulders, hands, wrists and fingers were all normal. (Id.) Plaintiff walked unassisted and at a normal gait. (Id.) X-rays of Plaintiff's cervical spine and lumbosacral spine were also normal. (Id.) Dr. Patel diagnosed Plaintiff with a history of carpal tunnel syndrome, chronic lower back and neck pain and a history of lupus. (Tr. 152.) However, Dr. Patel had not received any report from Newark Beth Israel Medical Center at that time. (Id.)

On August 7, 2001, Dr. Keith Fraser stated Plaintiff's treatment was active and ongoing. (Tr. 162.) Dr. Fraser diagnosed Plaintiff with bilateral carpal tunnel syndrome on May 24, 2001 and recommended surgery. (Id.) On May 30, 2001, Dr. Fraser reported to Dr. Ortiz that the outcome of Plaintiff's surgery may be "somewhat compromised" by the fact that she has lupus. (Tr. 178.) Plaintiff underwent right carpal tunnel release surgery on July 20, 2001, and Dr. Fraser anticipated left carpal tunnel release surgery in September or October of 2001. (Tr. 162.) Dr. Fraser found Plaintiff to be totally disabled from any employment while she was recovering from surgery. (Tr. 163.)

On September 20, 2001, Dr. Fraser stated he recommended immediate carpal tunnel release surgery based on Plaintiff's severe pain and numbness. (Tr. 164.) While Plaintiff was making excellent recovery from her right carpal tunnel release surgery, the recovery was complicated by an unrelated blunt trauma to her right forearm. (Id.) Dr. Fraser stated Plaintiff required left carpal tunnel surgery which would take place at an unspecified time in the future. (Tr. 165.) While Dr. Fraser stated that Plaintiff is "totally disabled from any form of gainful employment using her hands," he felt that this disability was temporary. (Id.) On October 30,

4

2001, Dr. Fraser reported to Dr. Ortiz that Plaintiff underwent left carpal tunnel release surgery on October 23, 2001. (Tr. 182.) Dr. Fraser stated Plaintiff appeared to be recovering satisfactorily. (Id.)

On January 15, 2002, Dr. Carlo Minardi stated he has treated Plaintiff for systematic lupus erythematosus and depression since October 14, 2001. (Tr. 171.) Dr. Mindardi noted he had prescribed Paxil and Ultram for the Plaintiff. (Id.)

## B. Work Experience And Vocational Skills

Plaintiff's testimony indicates she has done sales, computer, data entry and clerical work. (Tr. 227.) Plaintiff's last employment was from February to March of 2000 at Ricoh Corporation. (Id.) She stopped working due to health problems. (Id.) Plaintiff has been treated by a rheumatologist for lupus since 2001. (Tr. 230.) Due to her condition, she stated she is tired most of the day and does not have any energy to do anything. (Tr. 231.) She suffers from joint and muscle pain in her knees, arms, neck and back. (Tr. 227.) The throbbing pain in her joints occurs daily. (Tr. 232-233.) Plaintiff has also lost a total of six pounds due to a lack of appetite caused by lupus. (Tr. 223.)

Plaintiff testified she underwent both right and left carpal tunnel surgeries. (Tr. 229-230.) As a result, her left arm is fine, although she still experiences some pain in her right arm. (Tr. 230.) However, she cannot put a lot of pressure on her hands and can only use them for short, five minute periods. (Tr. 233.) Plaintiff also suffers from migraines twice a month. (Tr. 234.) The migraines cause pain, blurred vision, and vomiting. (Id.) Plaintiff also stated she is taking Celexa for depression. (Id.) Due to her depression, she cries easily and that she has trouble concentrating and sleeping. (Tr. 235-236.) Plaintiff's other medications include Celebrex,

prednisone, Hyroxychloroquine, and Roxicet. (Tr. 227-228.) Plaintiff testified that while she is supposed to take Roxicet once every four hours, she only takes it four or five times a week as needed for her pain. (Tr. 237.) Roxicet is effective at reducing her pain. (Id.)

Plaintiff testified she lives with her seven year old son in an apartment. (Tr. 228.) She receives welfare and her mother, Selena Moore, also assists her financially. (Tr. 228-229.) Plaintiff's mother and son do all of the household chores, and her mother does all of the cooking. (Tr. 223, 236.) According to Plaintiff's testimony, she attends church every Wednesday with her mother and about twice a month on Sundays. (Tr. 236.) Plaintiff does not participate in any other social activities except visiting with acquaintances in her apartment building. (Id.) Plaintiff's testimony indicates she walks her son to and from school everyday, which is a total of eight blocks. (Tr. 228, 234.) Afterwards, she comes home, watches television, listens to music or goes to sleep. (Tr. 288, 232.) Plaintiff stated she can only type or hold a coffee cup for five minutes and can only sit for an hour and a half before she needs to lie down. (Tr. 233.) She can lift ten pounds at most. (Tr. 234.)

### III

#### A. Standard of Review

A review of a final decision of the Commissioner is made pursuant to 42 U.S.C. § 405(g), which provides as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ...

42 U.S.C. § 405(g). Section 405(g) permits a District Court to review the transcripts and records

upon which a determination of the Commissioner is based. Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000). If supported by substantial evidence the Court must accept the Commissioner's factual findings of disability as conclusive. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Substantial evidence is "more than a mere scintilla." Burnett v. Commissioner, 220 F.3d 112, 118 (3d Cir. 2000); Ventura, 55 F.3d at 901 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This definition "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Morales, 225 F.3d at 316 (3d Cir. 2000); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. Stewart v. Secretary of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983); Claussen v. Chater, 950 F.Supp. 1287, 1292 (D.N.J. 1996). The standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). The record must be reviewed as a whole to determine whether substantial evidence is present to support the decision of the ALJ. Id.

Reasonable minds can reach different conclusions following review of the evidentiary record upon which the decision of the Commissioner is based. Nevertheless, in such cases, the function of a District Court is to determine whether the record, as a whole, contains substantial

evidence to support the findings of the Commissioner. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994) (quoting Richardson, 402 U.S. at 401); Schaudeck, 181 F.3d at 431. A court may not displace the choice of an administrative body "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." N.L.R.B. v. Greensburg Coca-Cola Bottling Co., 40 F.3d 669, 672-73 (3d. Cir. 1994) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)); see also Hartranft, 181 F.3d at 360. Nonetheless, an ALJ is expected to do more than simply state factual conclusions. Stewart, 714 F.2d at 290; Claussen, 950 F.Supp at 1292. Rather, an ALJ must make specific findings of fact to support his or her ultimate findings. Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir.2000).

An ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when the testimony of a physician treating a claimant is rejected. Morales, 225 F.3d at 320; Plummer, 186 F.3d at 429; Wier on Behalf of Wier v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). An ALJ must also give serious consideration to the subjective complaints of pain of the claimant, even when those assertions are not fully confirmed by objective medical evidence. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993); Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986). Where a claim is supported by competent evidence, an ALJ must specifically weigh that evidence. Schaudeck, 181 F.3d 429, 435 (citing Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

## B. Five Step Sequential Analysis

Title II of the Social Security Act provides benefits due to disability for those eligible. 42 U.S.C. § 423. Disability is defined under 42 U.S.C. § 405(g) as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment." <u>Richardson</u>, 402 U.S. at 390. The language of the Act further describes the required severity of an impairment:

> [An individual] shall be determined to be under disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Act also dictates the plaintiff meet the insured status requirements of 42 U.S.C. § 423(c).

The ALJ employs a five-step sequential analysis pursuant to 20 C.F.R. § 404.1520 when determining the claim of an individual for SSI. The first step requires the ALJ to determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a), 416.920(a). "Substantial gainful activity is work that is both substantial and gainful," which "involves significant physical or mental activities" and is usually the type to be done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. This includes part-time work or activity in which the claimant is given less responsibility or less pay than previous work. 20 C.F.R. § 416.972. If the claimant is engaged in such, disability benefits are immediately denied without proceeding further. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R.§ 404.1520(b). If not, step two is followed.

The second step is to determine if the severity of the impairment or combination of impairments passes a minimum threshold. 20 C.F.R. § 404.1520(c). A severe impairment is one that "limit[s] significantly the individual's physical and mental ability to do basic work activities." <u>Santise v. Schweiker</u>, 676 F.2d 925, 927 (3d Cir. 1982). The ability to do basic work activities is defined as "the ability and aptitude necessary to do most jobs." 20 C.F.R. § 404.1521(b). This includes "[p]hysical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling...[c]apacities for seeing, hearing, and speaking...[u]nderstanding, carrying out, and remembering simple instructions...[u]se of judgment...[and] dealing with changes in a routine work setting." Yuckert, 482 U.S. at 141 (quoting 20 C.F.R. § 404.1521(b)).

Severe impairment can only be determined through "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Factors such as age, education, and work experience are not considered. 20 C.F.R. § 404.1520(c). However, considerations regarding daily activity, location, duration, pain intensity, side effects of medication, and aggravating factors can be weighed if symptoms suggest a greater restriction of function. Sweenery v. Commissioner of Social Sec., No. 99-6048, slip op. at 17 (3d Cir. June 20, 2000). If a claimant's impairment or combination of impairments is sufficiently severe the ALJ proceeds to step three of the analysis, ascertaining whether the impairment is equivalent to one of the listed impairments acknowledged to be "so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id.

If the claimant is not conclusively presumed to be disabled then the analysis proceeds to the fourth step. During this sequence there is a determination of the claimant's residual functional capacity to see if the impairment precludes him from performing past work. Schaudeck, 181 F.3d at 431; 20 C.F.R. § 404.1520(e). Residual functional capacity is defined as what a claimant "can still do despite his limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ reviews the physical and mental demands of past relevant work to discern whether the claimant can still perform such work. Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992). At this step, the ALJ must not consider vocational factors such as age, education, and work

experience to determine whether a claimant retains residual functional capacity. 20 C.F.R. § 404.1560(b). Under the Act, the claimant is not considered disabled if he is capable of meeting the demands of previous work. Yuckert, 482 U.S. at 141.

At step five the burden of proof shifts to the Commissioner, who must demonstrate that the claimant is capable of "perform[ing] other [available] work in the national economy in view of his age, education, and work experience." Morales, 225 F.3d at 318; Yuckert, 482 U.S. at 142. The claimant's residual functional capacity must also be considered along with the cumulative effect of the claimant's impairments. Schaudeck, 181 F.3d at 432; 20 C.F.R. § 404.1520(f), 404.1545. Thus, an individual is found to be disabled if his residual functional capacity limits his ability to perform other work in the national economy as a result of his medically determinable impairment or combination thereof.

## C. Administrative Law Judge's Decision

Plaintiff claims disability as of February 16, 2001, due to migraine headaches, lupus, bilateral carpal tunnel syndrome and depression, which have caused fatigue, joint and muscle pain, and a lack of energy, thus preventing her from working. (Tr. 37-39, 45-54, 227, 231, 234.) The ALJ found that Plaintiff's impairments, separately or in combination, were considered severe. (Tr. 19.) However, Plaintiff's impairments are not medically equivalent to a listed impairment which precludes substantial gainful activity. (Id.) Moreover, her past position as a general clerk does not require her to perform activities she does not presently have the capacity to do. (Id.) Consequently, the ALJ determined the Plaintiff is not disabled. (Tr. 20.)

Pursuant to step one of the five step sequential evaluation, the ALJ determined from Plaintiff's testimony that she had not been engaged in substantial gainful activity since February 16, 2001. (Tr. 15.) Accordingly, the ALJ proceeded to step two.

11

In step two of the analysis, Plaintiff must demonstrate her impairments are sufficiently severe. Morales, 225 F.3d at 317; Yuckert, 482 U.S. at 142 n. 5. If Plaintiff fails to make this threshold showing, she is ineligible for SSI benefits. Id. at 148; Santise, 676 F.2d at 927. The ALJ determined Plaintiff has a combination of severe impairments which "cause significant vocationally relevant limitations." (Tr. 15.) The record indicates Plaintiff has lupus, has undergone bilateral carpal tunnel syndrome surgery, and suffers from depression. (Tr. 15.)

Since the ALJ found Plaintiff not to be currently engaged in substantial gainful activity and established that she suffers from a severe impairment, the ALJ proceeded to the third inquiry in the analysis. Step three of the analysis requires a determination of "whether the impairment is equivalent to one or a number of listed impairments [(the "listed impairments")] that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141. "If the impairment meets or equals [a] listed impairment, the claimant is conclusively presumed to be disabled." Id.; see also 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ determined Plaintiff does not suffer from an impairment that is comparable in severity to any of the listed impairments. (Tr. 15, 19.) While the medical record indicates Plaintiff suffers from lupus and depression and is in the post-operative stage of bilateral carpal tunnel syndrome, the ALJ stated that there is no evidence to show Plaintiff is affected by them to the severity necessary to equal a listed impairment. (Tr. 15.) On May 4, 2001 and June 6, 2001, Dr. Kowalec assessed Plaintiff's lupus as clinically controlled. (Tr. 16.) Dr. Fraser stated Plaintiff was making a satisfactory recovery from bilateral carpal tunnel surgery and that Plaintiff's disability was only temporary. (Tr. 17.) Finally, comprehensive tests such as a CT scan of the brain, an MRI of the lumbar spine, x-rays of the cervical spine, and neurologic, motor and sensory examinations have all produced normal results. (Tr. 15-16.)

If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Under these steps, "the Commissioner must determine whether the claimant retains the ability to perform either his [or her] former work or some less demanding employment." Zebley, 493 U.S. at 535 (quoting Heckler, 461 U.S. at 469); see also Adorno, 40 F.3d at 46; Williams, 970 F.2d at 1187.

At step four, the ALJ considered whether Plaintiff retained the residual functional capacity to perform her past work activities. Here, the ALJ must consider the medical record with plaintiff's subjective complaints. Plaintiff testified she suffers from joint and muscle pain in her legs, arms, neck, and back. (Tr. 17.) Plaintiff also testified she is often fatigued and has difficulty sitting or walking for significant periods of time. (Id.) Finally, Plaintiff alleged she cries easily and cannot concentrate for long periods of time due to depression. (Id.) However, Plaintiff retains the ability to walk eight blocks a day, can lift about 10 pounds, can hold a coffee cup for five minutes and can travel unassisted. (Tr. 17-18.) Considering Plaintiff's objective medical evidence, the ALJ found Plaintiff's subjective complaints to be incredible: "This level of functionality is inconsistent with her allegations of total disability." (Tr. 18.)

Consequently, the ALJ determined that Plaintiff has the capacity to perform her past position as a general clerical worker and thus, Plaintiff is not disabled, disqualifying her from social security benefits. (Tr. 18, 20); 20 C.F.R. §§ 404.1520(e) and 416.920(e). The conclusion is reasonably based on substantial relevant evidence in the entire record. This Court thus affirms the Administrative Law Judge's decision finding Plaintiff not disabled and denying her Supplemental Security Income benefits.

1. The ALJ's Determination that Plaintiff Did Not Have a Listed Impairment

Since the ALJ found Plaintiff not to be currently engaged in substantial gainful activity

13

and established that she suffers from a severe impairment, the Court shall proceed to the third inquiry of the analysis. 20 C.F.R. § 404, Subpart P, Appendix 1. The listed impairments are descriptions of physical and mental impairments which are "defined in terms of several specific medial signs, symptoms or laboratory results." Zebley, 493 U.S. at 530. The burden is on a plaintiff to demonstrate his impairment meets or is equivalent to one of the listed impairments. McCarthy v. Commissioner of Social Sec., 1999 WL 325017, at *13-14 (D.N.J. May 19, 1999). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Zebley, 493 U.S. at 530 (emphasis in original). The level of severity required is heightened because "the listings operate as a presumption of disability." McCarthy, 1999 WL 325017, at *13. Subjective complaints are not sufficient to demonstrate a disability. Id. Rather, the plaintiff must present medical and laboratory findings as well. Id.

The ALJ ruled Plaintiff did not suffer from a listed impairment because "no treating physician has mentioned finding equivalent in severity to the criteria of any listed impairment." (Tr. 15.) The ALJ explains he paid particular attention to relevant categories including 14.00 - Immune System. (Id.)

The criteria for systemic lupus erythematosus is extensive. See 20 C.F.R. § 404, Subpart P, Appendix 1, section 14.02; Vasquez v. Barnhart, 2004 WL 725322, at *7-9 (E.D.N.Y. March 2, 2004). The ALJ did not specify which criteria Plaintiff did not meet. However, the ALJ relied upon the findings of Dr. Kowalec, Plaintiff's rheumatologist. (Tr. 16.) On May 4, 2001 and June 6, 2001, Dr. Kowalec assessed Plaintiff's lupus as clinically controlled with medication. (Id.) Also, on May 15, 2001, Dr. Patel stated the Plaintiff had a "history of lupus" as opposed to active

14

lupus. (Id.) Finally, Dr. Minardi, Plaintiff's current rheumatologist, only stated that he has treated Plaintiff for lupus since October 14, 2001, but gives no further description of Plaintiff's condition, status, symptoms or medications. (Tr. 171.)

The ALJ has an obligation to support his findings based on substantial evidence in the record. McCarthy, 1999 WL 325017, at *14. However, a reference to the entire record is sufficient if "the reviewing court is able to identify the supporting evidence upon which the ALJ placed reliance." Id. Accordingly, this Court can readily determine the medical evidence the ALJ depended upon to rule Plaintiff does not have a listed impairment. As previously stated, according to the record, none of Plaintiffs doctors have explicitly stated that Plaintiff is disabled due to lupus. (Tr. 15.)

The claimant has the initial burden to demonstrate through medical evidence that she is disabled. Dobrowolsky, 606 F.2d at 406. Plaintiff claims the expert opinions of her treating physicians are entitled to substantial weight. (Pl.'s Br. at 8 (citing Cotter, 642 F.2d at 704).) Plaintiff also claims Dr. Kowelac's use of the term "clinically controlled" cannot be used by the ALJ to determine the Plaintiff does not have a listed impairment because this is "a term of art" which needs further clarification. (Pl.'s Reply Letter at 2 (citing Schaudeck, 181 F.3d at 432).) However, in Schaudeck, the Third Circuit held that the term "responding to" was problematic when it was considered synonymous to the words "controlled by" in the Regulations. 181 F.3d at 432. Furthermore, the Third Circuit referred to Webster's Dictionary to interpret the meaning of "control" as used in the Regulations as "the treatment has been so successful that the disease can be considered effectively neutralized." Id. The ALJ did not substitute Dr. Kowalec's words, but interpreted her exact prognosis of "clinically controlled" lupus to mean Plaintiff was no longer

15

suffering from the disease. As this is the same meaning the Third Circuit attributed to the term "controlled by" in Schaudeck, it follows that the ALJ properly construed Dr. Kowalec's assessment.

Moreover, "when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." Cotter, 642 F.2d at 705. The ALJ is entitled to chose to adopt individual expert reports as long as he explicitly states which opinion he is accepting. Id. An expression of the ALJ's analysis is essential so the reviewing court is assured probative evidence was not ignored. Id. Hence, the ALJ correctly reviewed the medical reports pertaining to the status of Plaintiff's lupus and based his opinion on substantial evidence in the record.

The ALJ also considered Plaintiff's bilateral carpal tunnel syndrome when considering if Plaintiff had a listed impairment under Listings 1.00 - Muskuloskeletal System and Plaintiff's complaint of depression under 12.00 - Mental Disorders. (Tr. 15.) However, Dr. Fraser, Plaintiff's hand surgeon, explicitly stated Plaintiff had a "temporary disability" and that she was making a "satisfactory recovery." (Tr. 180-182.) The ALJ also found that "[c]onsultative examination findings were all normal." (Tr. 17.) This included a CT scan of the brain, an MRI of the lumbar spine, neurologic, motor, sensory, cervical, thoracic, and joint examinations. (Tr. 15-16.) Dr. Patel assessed Plaintiff's hands, wrists and fingers as normal. (Tr. 16.) Consequently, the ALJ provided substantial evidence that Plaintiff did not have a Muskoloskelatal listed impairment.

Lastly, Plaintiff claims the ALJ did not consider the record of treatment for depression. (Pl.'s Br. at 13.) While the ALJ does not mention Dr. Minardi in his decision, this Court agrees

16

the evidence is not sufficient to consider Plaintiff's depression a severe impairment. Again, this Court can readily determine the medical evidence the ALJ depended upon to rule Plaintiff does not have a listed impairment. On January 15, 2002, Dr. Minardi indicated that Plaintiff is under his care for depression, and he prescribed Paxil. (Tr. 171.) However, he does not state any further details pertaining to Plaintiff's condition nor are any other notations of depression found in the record. Moreover, Plaintiff testified that Dr. Minardi is a rheumatologist, however, he is treating her for depression. (Tr. 235.) The ALJ noted Plaintiff has never been hospitalized for depression. (Tr. 18.) Consequently, based on substantial evidence, the ALJ found the Plaintiff did not have a listed impairment under 12.00 - Mental Disorders.

2. The ALJ's Determination that Plaintiff Can Perform her Past Relevant Work

After ruling Plaintiff did not have a listed impairment, the ALJ proceeded to step four of the analysis. (Tr. 17.) The burden is still on Plaintiff to provide sufficient evidence to demonstrate she cannot perform her past relevant work. Claussen, 950 F. Supp. at 1294. Plaintiff claims the ALJ did not fully consider her non-exertional impairments. (Pl.'s Br. at 12.) However, the ALJ has discretion to determine whether or not Plaintiff's subjective complaints of pain are credible. (Id.) Although an ALJ "must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence," the ALJ "can reject such claims if he does not find them credible." Schaudeck, 181 F.3d at 433. Therefore, the ALJ's can discount subjective complaints inconsistent with the objective medical record when determining if a plaintiff can perform her past relevant work. If the ALJ finds Plaintiff's testimony is not credible, "the basis for such a conclusion must be indicated in his or her decision." Claussen, 950 F. Supp. at 1292.

This is significant so the reviewing court can tell whether "significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

The ALJ properly exercised his discretion in determining Plaintiff was incredible because the complaints expressed at the hearing and the medical conditions indicated by the record were inconsistent. (Tr. 17.) The ALJ considered the entire record and did not ignore or discredit any significant probative evidence. Plaintiff has not provided a single expert who claims she is totally disabled. As previously stated, the ALJ found Plaintiff's lupus to be clinically controlled and her recovery from bilateral carpal tunnel surgery satisfactory. (Id.) In regard to Plaintiff's allegations of debilitating migraines, the ALJ determined they are "only occasional" and that Plaintiff is not taking any prescription medications for treatment. (Tr. 18.) Further, Dr. Patel's examination, which included x-rays of the cervical and lumbar spines, "showed muskuloskelatal was unremarkable." (Id.) The ALJ considered Plaintiff's testimony regarding her depression and that she takes Celexa. (Id.) However, the ALJ found this impairment to be non-severe due to a lack of evidence in the record.[2] Lastly, based on Plaintiff's testimony, the ALJ found she is not particularly limited in her daily activities including walking her son back and forth to school, watching television, reading, and visiting friends unassisted. (Id.) In sum, Plaintiff's subjective statements of pain, fatigue and other limitations "are not supported by objective medical evidence in the record and are therefore not credible." (Tr. 17.)

Consequently, the ALJ ruled that Plaintiff retained the residual functional capacity to

---

[2] Plaintiff states the ALJ ignored a signed note by Dr. Minardi which states Plaintiff is under his care for depression. (Pl.'s Br. at 13.) However, this is the same information Plaintiff provided to the ALJ during the June 6, 2002 hearing. Furthermore, no other descriptions or details pertaining to Plaintiff's depression are provided in the record.

perform light work, and she was able to perform her past relevant work as a general clerical worker. (Tr. 17-19.) Light work includes frequently lifting up to ten pounds and walking or sitting for a period of time with some use of arm and leg controls. 20 C.F.R. 404.1567(b). The ALJ stated he considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (Tr. 17.) Plaintiff has failed to provide adequate medical evidence to credit her subjective complaints or to show she is unable to perform the duties of a general clerical worker. Therefore, the ALJ properly determined Plaintiff can still perform her past relevant work.

## IV

For the foregoing reasons, the finding that Plaintiff was not disabled, as the term is defined by the Social Security Act, was supported by substantial evidence in the record. The decision of the ALJ is hereby **affirmed.**

**SO ORDERED.**

DENNIS M. CAVANAUGH, U.S.D.J.

Date: July 28, 2005
Orig: Clerk's Office
cc: All Counsel of Record
    The Honorable Mark Falk, U.S.M.J.
    File